The next case will be 091473, Odoms, Tennessee Pride, against Parkland Acquisition. Good morning, Your Honor, State Police and Court. My name is Marcia Gittler, and I represent the appellant, Odoms, Tennessee Pride Sausage. Summary judgment is an appropriate vehicle for this speedy and inexpensive resolution of an opposition, but it's not an appropriate vehicle to avoid analysis of the evidence of record or the careful consideration that's required for a determination of likelihood of confusion. That is precisely what the Board did, and in so doing committed reversible error. First, the Board did not consider at all any of the substantial evidence of record of the actual uses by Odoms of its former remark. Were those uses pleaded in this case? We submit they were. We pleaded use. True, we did not attach to the complaint every single form of use of the mark, but we did present it in opposition to the motion for summary judgment. We argued it in opposition to the motion for summary judgment. There was no motion to strike. In the reply, there was no request that the Board deem this evidence inadmissible or disregard it. Under the Board's rules, when that happens, the evidence is deemed tried by consent, and had it been raised at that point, we could have filed a motion to amend the pleadings. The Board is very, very liberal in granting motions to amend the pleadings. What rule says that when those things are not objected to, they are deemed considered by consent? Deemed presented by consent? To trademark, it's in the Board's manual procedure. It would be 528.07B. This is T-M-E-T? It's the Board's, the T-B-F. Ah, I found it. And FF concedes at page 30 of its brief that the Board did not consider any of the actual uses of its mark. This Court has made clear that where evidence of actual use of a mark is presented by the opposer, and is properly of record, the Board should consider it and determine the likelihood of confusion. Does the Board really need to get to that point if they do an analysis, saying that basically there's no confusion among the marks, or it's so dissimilar that there could be no confusion no matter what? I don't see how the Board can find the marks so dissimilar when they don't look at the marks as actual use. It's not a theoretical proposition. It's not two pieces of paper. It's the marketplace. Consumers don't look at trademark registrations. Was there any evidence of confusion in the marketplace? No, there was not. But there was not evidence of substantial use by the applicant if it's marked in the marketplace. There was no evidence of confusion. There was no evidence of actual confusion. Second, the Board did indicate that it presumes that all relevant likelihood of confusion factors, except for the similarity of marks, would be considered as weighing in Odom's favor. And these were principally the strength of the mark, and the similarity of the party's goods channels of trade in customers. But it's one thing to say, well, we presume that these factors are in your favor. It's another to actually undertake the weighing and analysis that such a presumption would require. So that when an opposer's mark is strong, as this Court has said, it can never be of little consequence, and it reduces the level of confusing similarity that's required to show marks are confusingly similar. Similarly, when the goods and services are identical or closely similar in the channels of trade in customers, it lowers the bar for confusing similarity. There was no indication at all in the Board's ruling that they took these legal principles into account and that they applied them in comparing the marks. So what you have is just basically a highly subjective finding that the commercial impressions of the marks, actually just the paper marks in a side-by-side comparison are dissimilar. And, of course, this really takes us to the ultimate issue that we have here, and that's the Board's determination on confusing similarity. When you determine commercial impressions, it's important, it's been said time and time again, that it's the recollection of the average consumer that you focus on. And average consumers don't remember details. They take general impressions and have general recollections. If a consumer sees the Odin's Tennessee Pride mascot outside a grocery store and two weeks later sees a newspaper ad of FF's, that's how this confusion may occur in the marketplace. But the Board undertook instead a sort of a part-by-part dissection of the marks, putting them together, putting them side-by-side. And in doing that, first the Board said that the only similarity of the marks is that they're smiling boys and sometimes they're waving their hands. Well, they're not just smiling boys. They're farm boys. They're in overalls. They're in straw hats. Pointed out that the Board said that Odin's mark wears a pilgrim hat and the postmark wears a cowboy hat. There's no evidence in the record for that, but I submit that the record makes clear that consumers are going to view these two marks as farm boys, not cowboys, not pilgrims. And one has to wonder why the Board had to stretch for such an artificial distinction if this is a conclusion that no other reasonable person could reach, fact finder could reach. In dissecting the differences, the Board said, well, Odin's mark has a ribbon on his hat, his feet are bigger and the hands are bigger and he has a straw in his mouth. But would consumers focus on the ribbon on Odin's hat and use that to distinguish that mark from other marks? Would they notice the size of the mark's feet when they see it in use and use that to distinguish the marks as they are used in the marketplace? And the straw in the mouth of the postmark, well, in fact, if you look at the mark as actually used and there's a specimen from the post application and it's cut and blown up on page 21 of our brief, you'll see that you can barely even see the straw in the postmark's mouth. Also, because the use of the Odin's Tennessee Pride Fogloi mark has not been static but has taken on different forms, this also affects consumer perceptions and would make other details in different poses and things in their mouth or not in their mouth have less of an impression in distinguishing marks. It is apparent from the board's analysis that without enunciating any legal basis for it, the board narrowly circumscribed the scope of Odin's farm boy mark. Under the board's analysis, Odin's fiercest competitor could take a farm boy in overalls and straw hat and put it on a directly competitive product and Odin's wouldn't be able to do anything about it so long as he had a straw in his mouth or his feet and hands were bigger or there wasn't a ribbon on his hat. In fact, under the board's analysis, Odin's own marks would be found not confusingly similar to one another as a matter of law. The board held Odin's to a higher burden of proof. It's almost a copyright substantial similarity standard. This case is a similar judgment case. Therefore, it doesn't mean that this court should affirm if the board's conclusion on confusing similarity was reasonable. It has to be the only conclusion that a reasonable fact finder could reach. I submit that particularly if you look at the comparison of the marks on page 21 of our brief, that a reasonable fact finder could find under all the evidence of record that there's a likelihood of confusion. Therefore, we would ask this court to reverse the board's decision and remand for trial on the opposition. Good morning, your honors. My name is Scott Johnston and I'm representing the appellee FF Acquisition LLC in this matter. May it please the court. FF Acquisition respectfully requests that this court affirm the trademark trials appeal board's decision and allow it to register the boy design trademark that it has used and already registered, except without arms and legs. When the board properly applied the correct rules of law, it properly found that the design marks at issue here are simply too dissimilar to create a likelihood of confusion. What about the fact that the board didn't consider the unregistered uses, the mascot? Yes. In our appeal, Adams argues that the board did not consider its unregistered uses and that argument should fail for three reasons. First of all, they never pleaded the unregistered uses in their notice of opposition. And doesn't the rule that was cited by Ms. Gettner deem those things admitted? Well, my second point was going to be they never... There were specimens submitted during the arguments, correct? In opposition to the summary judgment motion, Odom submitted a bunch of evidence on the strength of its mark. This included all sorts of examples of use of the Odom's Tennessee Pride Farm Boy for packaging and advertisements, the coupons on their website, a whole bunch of them. And as a mascot. And if you look at them, they're all identical to the marks in the registrations, but for one. I mean, they may be a little bit different in the sense that they're holding a spatula or playing a fiddle instead of holding a fishing pole, but it's the very same character. However, there's one exception to that, and that is this mascot that Odom's is putting front and center on this appeal. However, at no time, either in the notice of opposition or in the summary judgment proceedings, did Odom's suggest that they have independent and separate common law rights in that mascot. It was merely submitted as one of the many examples of how they use the mark to show that the mark was strong. At no time did we perceive that to be an independent and separate trademark that was being asserted against us and that the board and FF Acquisition should be analyzing this issue of likelihood of confusion against each of the independent  This is a new argument on appeal. Moreover, even if the court did not consider that mascot, it's harmless error because that mascot also is so dissimilar from FF Acquisition's application and design that there isn't a likelihood of confusion. The mascot, like all the other uses, has this... Isn't the test that there could not possibly be a likelihood of confusion? Yes, it is. We're talking summary judgments here. That is correct. And if you look at the marks at issue here, there cannot be a likelihood of confusion. Why? Because the marks are so dissimilar that no one is likely to believe that they come from the same source. Dissimilar from the marketplace, market view, or dissimilar from the board's view and its analysis of the factual similarity and dissimilarity. Both, Your Honor. If you look at the registrations and the black and white versions of the marks as presented in this case, they are very different from FF Acquisition's platform mark. The hat, the tall hat with the ribbon versus the short cowboy hat. The facial features are completely different. FF Acquisition's are cartoon-like. Odom's are very realistic. If you look at the depiction on page 21 of the appellate's brief, there are many, many similarities. Is it difficult to conclude that no one could conclude that there's a likelihood of confusion? Well, I don't think it is difficult, actually, Your Honor. And that depiction in the brief is a little misleading because it is appropriate to disregard color when you're talking about federal registrations that don't have color claims, which none of Odom's do. However, when you capture this mascot, which is not the subject of registration, when you capture him and put him in black and white in a brief, it looks a lot different than the way he does in the real world. You have to look at him as the customers would look at him in the real world. One of the most distinctive things about him is he has this bright red hair. And if you look at the use that FF Acquisition makes, you're talking about that he has blonde hair. In addition, he has the tall straw hat. It's straw colored. And if you look at the use of the specimen that Ms. Gettner referred to, we have a brown hat. It isn't a straw hat. It's a brown cowboy hat. And it's blonde hair. And he's got a red shirt, not a blue shirt, as in Odom's. There are many differences that come out once you look at the real world pictures. However, the issue before the board and the issue that had been fled in the notice of opposition was these registered marks versus the applied for mark. In the summary judgment papers, in your reply to the other side's answer to your summary judgment papers, did you comment on these common law uses? And I ask this question just to see whether this rule kicks in or not. The rule seems to suggest that if the party moving to a summary judgment treats the unpleaded matter on its merits and does not object on the ground that it's unpleaded, the board may deem it amended, may deem the pleadings amended. So the question is, did you join the issue by responding to their arguments concerning these unregistered uses? Well, we did discuss the evidence of use. However, it's important to recognize, it's important to look at how they referred to these unregistered uses. They did not say in their response brief, Your Honor, you have to consider the unregistered use separate and apart from the registered uses. They're very different, they have different features, and they have common law trademark rights in those, and those should be compared separately to the applied form art in addition to all the registrations. That's not what they said. What they said was, We've used it a great deal. We've used it in a variety of forms. And as a result, we have broad trademark rights in it. They did not specify that a particular unregistered use was in any way different, other than it was in different positions or holding something different. They never made clear, and we never perceived it to be a new claim based on a common law right that hadn't been pled before. And so we did talk about it in response to how strong they were suggesting their mark was, but did we go into a detailed analysis comparing the mascot to our applied form mark? We did not. The mascot wasn't highlighted in the summary judgment briefing. It wasn't, unlike in the appeal briefs, it wasn't put in there. It wasn't focused on. It was referenced as one of the uses, but it wasn't a focus, it wasn't a claim that we perceived was being asserted. And I don't believe the board perceived it to be a separate claim either. Other information was submitted, evidence was submitted to establish the strength of the mark, other than the registrations. And let's hear the argument. My audience submitted a declaration by the president and he testified that it has to do with the company had been formed, it's been around for many years. Aside from that, was there any marketing elements showing the strength of the mark? Any marketing elements? No, no. It was all, in fact, no sales were referenced either. It was really just, these are the ads that we ran and these are the places we've used it. There was no advertising expenditures, there were no sales figures, but they did provide a number of different examples of their use. Well, there was one declaration asked to use, and was that the single piece of evidence that was submitted? Yes, Your Honor, it was. Now they focus on this mascot now because it does look a little different from their registered uses, but the mascot, understand, is a costume that's big enough to fit an Owens employee, so it's huge. Of course it has wider hands and wider feet, it has to fit a person in it, but it still has the distinctive features, the tall straw hat, the ribbon above the brim, the bare feet, and in contrast to FF Acquisitions, Mark, FF Acquisitions has the cowboy and the distinctive piece of straw hanging out of his mouth and the different facial features. Now Owens contends, we've already talked about this, consequently the unregistered uses do not justify a reversal because Owens never pled them in the notice of opposition, never sought to amend it, never argued that they had separate common law rights in the mascot in the briefing below, and they didn't prove that they had used the mascot prior to FF Acquisitions' filing date. There's no evidence as to when that was first used. The only reference in the record is to 2008, which is after FF Acquisitions' filing date, but moreover, even looking at the mascot, they're still too dissimilar to create a likelihood of confusion. Now finally, I'd just like to add that the board reached the right result here. The parties have coexisted with their separate boy-designed trademarks for many years, FF Acquisitions for its retail grocery stores and Owens for its sausage and breakfast products. There's no evidence of any actual confusion and there's no evidence of any damage, actual damage to Owens in this case. Accordingly, denying the opposition and granting FF Acquisition registration for the full figure of the farm boy that they already have the bust registered and have had for many years is appropriate in this case. Unless there are any questions, we ask that this court affirm the trademark to all the culprits. Just to address a few points quickly, first of all, Owens did not confine its mention or the evidence that it submitted of its mascot and many uses of its farm boy mark simply to a showing of the strength of the mark. We've quoted in our reply brief at page 3 some of the direct language, but I'll just quote one. Given the many ways opposers use it and portrays its Tennessee-primed farm boy, including the Tennessee-primed farm boy mascot, 0X7, 0X14, consumers are likely to associate them in the postmark of common source. It could have been more clear that we were arguing confusing similarity of that mark. As for priority, priority was not an issue. The motion for summary judgment was confined to two issues, likelihood of confusion in the Morehouse defense. Owens can hardly be faulted for not submitting proof of priority when that issue was not raised on summary judgment. As far as concurrent use of the mark, there is no evidence in the record of concurrent use of the opposed mark and Owens' mark for a period extending more than 10 months before the motion for summary judgment was filed. And the evidence by applicant of its use was one line in its declaration that they've used the mark since when they quoted the first use date on advertising in a newsletter. That was it. So to elevate the absence of actual confusion here to controlling factor based on this record would be an error. But in point of fact, the board didn't say that the absence of actual confusion affected their decision in any way. In fact, they didn't mention it but said all other factors are presumed in Owens' favor. And the same with strength of mark. The board said it was presumed in Owens' favor. So that's the presumption. And to now on appeal try and have appellate findings of fact on strength of mark, we will submit it's inappropriate. And finally, I just want to point out that I take exception to arguing about the color of the marks. There were no color pictures before the board in making their decision. And there's no color claim in the opposed mark. There's no color in the opposed mark and there's no color claim. I honestly wanted to use color representations and realized that that would have been inappropriate because that's not how the record was before. Did FF respond to your contentions with regard to your common law uses in the summary judgment proceeding? No, I'm sorry to say I don't remember. Does the rule require that in order for this deeming to trigger? No, I don't believe it does. And that's never how the board has applied it. The board has basically applied that rule. If somebody raises it and argues on it and you have an opportunity, as FF did at a reply brief, and you don't challenge the admissibility, then it's tried by consent. It happens a lot at trial when somebody will take a testimonial deposition and the board will say at the end, well, you let that happen at the testimonial deposition. You didn't say anything. I'm not suggesting the outcome one way or the other, but if the rule were firm on the ground that common law uses were not fled and therefore were not before the board, is there anything that would preclude you from filing another opposition based on those common law uses? Yes, it's time hard. Time hard because? A notice of opposition has to be filed within 30 days of publication or we took extensions within 20 days. So then you'd be left to your recourse with the cancellation afterwards? Correct. I see. Thank you.